UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE ORTEGA,

        Petitioner,

                            Case No. 1:08-cv-312
v.                              Hon. Robert J. Jonker

BLAINE C. LAFLER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. This matter is now before the court on the amended petition (docket no. 9) and petitioner's motion "to expound upon argument IV as it is listed within his amended petition for writ of habeas corpus" (docket no. 23).

### I.      Background

Following a preliminary examination on February 9, 2004, petitioner was bound over to the Oceana County Circuit Court on a charge of possession with intent to deliver 50 grams or more but not more than 450 grams of a mixture containing the controlled substance cocaine, M.C.L. § 333.7401(2)(a)(iii), a crime carrying a maximum penalty of 20 years in prison and a fine of $250,000.00. Prel. Exam. Trans. (docket no. 27); Opinion and Order (Jan. 3, 2006) (docket no. 33). The evidence presented at the preliminary examination included laboratory report testing the cocaine allegedly in petitioner's possession, which stated that it was, in fact, cocaine and weighed 115 grams. *Id*. After the bind over, the prosecutor filed an information charging petitioner with possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, and as an

habitual offender, fourth offense, M.C.L. § 769.12, which raised the maximum penalty for the charge to life in prison.  Prel. Exam. Trans. at p. 3; Opinion and Order (Jan. 3, 2006).

Petitioner's case was set for a jury trial on June 9, 2004.  Plea Trans. at p. 3 (docket no. 28).  On the morning of trial, in exchange for a guilty plea, the government agreed: to dismiss the charge of possession with  intent to deliver 50 grams or more but less than 450 grams of cocaine (identified as Count I); to dismiss "the Habitual Offender Fourth Offense;"  to charge petitioner with a second count of " possession of the controlled substance cocaine in an amount of 50 grams or more but less than 450 grams," which the prosecutor stated "is a felony that carries a maximum penalty of 20 years and a fine of not more than $250,000.00 or both" (Count II);[1] to allow petitioner "to plead to a sup two, Habitual Offender Second Offense;"  "to put a cap on his minimum sentence of up to -- of ten years;"  and to recommend that "the minimum sentence would not exceed sentencing guidelines." Plea Trans. at pp. 3-4.

At the plea hearing, the court explained the agreement as follows:

THE COURT:      Okay, Mr. Ortega, you've heard the statement of your
                attorney, do you, in fact, wish to plead to the amended
                charge in the Information which charges you with the
                crime commonly known as Possession of Cocaine in
                an amount of 50 grams or more but less than 450
                grams?

DEFENDANT:      Yes, I do.

---

[1] Although not explicitly enumerated in the plea transcript, the statute charged in Count II was M.C.L. § 333.7403(2)(a)(iii), which at that time of petitioner's conviction in 2004 provided in pertinent part that a person who violates this section by possession "in an amount of 50 grams or more, but less than 450 grams, of any mixture containing that substance [i.e., cocaine] is guilty of a felony and shall be imprisoned for not more than 20 years or a fine of not more than $250,000.00, or both." M.C.L. § 333.7403 (as amended, P.A. 2002, No. 665) (emphasis added).  Petitioner's Judgment of Sentence reflects that he pled guilty to possession of 50 to 224 [sic] grams of a controlled substance in violation of this statute as well as habitual offender second.  *See* Judgment of Sentence (Aug. 30, 2004) (docket no. 34).

2

THE COURT:          Do you understand that in exchange for your plea of guilty to the amended charge, that the original charge would be dismissed? The Prosecutor is recommending that, regarding your minimum sentence, that the Court would cap the minimum sentence at no more than ten years. In any event, the minimum sentence that the Court would give you would have to be consistent with the sentence guidelines.   In addition, he's withdrawing the Habitual Offender Fourth Offense and replacing that with an Habitual Offender Second Offense.  Do you understand that a second offense habitual notice has the affect [sic] of increasing the penalty by -- maximum penalty by fifty percent?  Is that correct, Mr. Shaw [the prosecutor]? Mr. Shabluk [defense counsel]?

MR. SHAW:           That's correct.

MR. SHABLUK:        Yes.

THE COURT:          So, with a maximum penalty of twenty years, that would be enhanced to thirty years.   Do you understand?

DEFENDANT:          Yes, Your Honor.

THE COURT:          So the practical effect of the plea agreement is this [sic] is that the harshest sentence that the Court could give you, consistent with the plea agreement, would be no less than ten years no more than 30 years in prison; that would be the -- the harshest sentence possible under your plea agreement. Do you understand that?

DEFENDANT:          Yes, Your Honor.

THE COURT:          Any questions about the plea agreement as you understand it to be?

DEFENDANT:          No, sir.

THE COURT:          Have I stated the agreement as you understand it to be?

DEFENDANT:          Yes, you have, Your Honor.

Plea Trans. at pp. 5-6.

During the colloquy with the trial judge, petitioner testified: that he understood the plea agreement; that he understood the new charge as set forth in Count II; that he understood that a plea of guilty could constitute a violation of his probation or parole and subject him to additional penalties; and that no other promises were made indicating that he would receive other benefits from the plea.  Plea Trans. at pp. 1-9, 11-12.  Petitioner also testified that by pleading guilty, he was giving up: his right to a jury trial; his right to a bench trial; his presumption of innocence; his right to require the prosecutor to prove guilt beyond a reasonable doubt; his right to have witnesses appear at trial; his right to have the court order witnesses to appear at his trial; his  right to remain silent; and, his right to testify at trial.  *Id.* at pp. 6-9.  Petitioner further testified: that no one threatened him to make the plea; that no one promised him anything beyond what was in the plea agreement; that he knowingly and voluntarily waived these rights; and, that there were no promises, threats or inducements to make the plea not stated on the record.  *Id.* at pp. 6-9, 11-12.

Petitioner then testified as to the factual basis for his plea: that on January 12, 2004, he had possession or control of some cocaine; that petitioner stored the cocaine at the residence of his girlfriend, under a dresser drawer where he kept his clothes; that the cocaine was petitioner's and under his possession or control; that petitioner knew that the substance was cocaine; and, that the quantity of cocaine under petitioner's possession and control exceeded 50 grams.  *Id*. at pp. 9-11.

After petitioner testified to possessing cocaine of more than 50 grams, the court questioned the prosecutor and petitioner's counsel to confirm that there were no promises, threats or inducements not disclosed on the record, and to confirm that the court complied with the applicable court rules with respect to a plea.  *Id*. at pp. 11-12.  Both counsel stated that there were

no undisclosed promises and that they were satisfied with the court's compliance with the court rules regarding pleas.  *Id*.  The court accepted petitioner's plea and referred him to the probation agent for preparation of a pre-sentence investigation report.  *Id.* at p. 12.

Nearly two months later, in a letter dated August 2, 2004, petitioner's counsel, Mr. Shabluk, advised petitioner: that his sentencing was scheduled for August 30, 2004; enclosed a copy of petitioner's Pre-sentence Information report (PSI); and noted that he had received messages and a letter regarding petitioner's desire to withdraw the guilty plea" because petitioner was "not getting the 'deal' that was negotiated."  Shabluk Letter (docket no. 29).  Mr. Shabluk further advised petitioner that after reviewing all of the sentencing information, he [Shabluk] did not believe that any errors occurred, explaining that "[t]he prosecutor offered petitioner a 10 year (120 month) cap in exchange for your guilty plea to possession of more than 50 grams but less than 450 grams of cocaine and Habitual 2nd, **irrespective of your actual sentencing guideline range**."  *Id*. (Emphasis in original.)  Mr. Shabluk continued:

> Note that a conviction at trial with a Habitual 4th, which was dismissed, would place the maximum range for your minimum sentence at 320 months.  This means that the Judge could set your minimum sentence at more than 26 years.  The sentence recommended by Department of Corrections in the [PSI] comports with the plea agreement.  I believe it would be an extremely foolish mistake on your part to attempt to withdraw from this plea agreement in light of the near probability of conviction at trial due to your confession.  Moreover, I do not believe the Judge will set aside your plea.  However, I will file the Motion to Withdraw the plea if that is what you desire.  Please do not hesitate to contact me if you have any questions or concerns.

*Id*.

Petitioner has presented this court with what appears to be a copy of an un-filed motion to withdraw plea, signed by Mr. Shabluk and dated August 17, 2004.  Motion (appendix E) (docket no. 35).

5

The court sentenced petitioner on August 30, 2004, in light of the plea agreement, which placed a ten year cap on the minimum sentence. Sent. Trans. at p. 3 (docket no. 30). The judge ordered the PSI to reflect this modification and then questioned petitioner regarding the accuracy of the PSI and other sentencing matters:

THE COURT:          Mr. Ortega. Have you had the opportunity to read the
                    pre-sentence report?

DEFENDANT:          Yes, I have.

THE COURT:          Do you have any additions, corrections, or
                    modifications to the report?

DEFENDANT:          No, I don't.

THE COURT:          Do you agree that the report is accurate?

DEFENDANT:          Yes, I do.

THE COURT:          Is there anything that you wish to tell me before I sentence you?

DEFENDANT:          No, Your Honor.

*Id*. at pp. 3-5.

The court then sentenced petitioner as follows:

For the record, the Court acknowledges that sentence guidelines call for a minimum sentence between 99 to 200 months. The Court will sentence consistent with the guidelines and consistent with the plea agreement that was worked out in this case.

It would be the sentence of the Court that the defendant serve not less than ten years nor more than 30 years with the Michigan Department of Corrections. He -- there is no jail credit that applies to this as the result of the defendant being on parole from a conviction from a Federal District Court in Wyoming.

And, also, the Court would impose the $60.00 crime victim's right fund fee, $60.00 State court assessment fee, and jury costs in the amount of $985.90.

6

And as I mentioned, this would be -- sentence which is consecutive to the Federal conviction that he was serving from the State of Wyoming.

The Court feels that this sentence is appropriate because it is consistent with the plea agreement, well within the sentence guidelines and it reflects the prior somewhat serious criminal record of the defendant as documented in the pre-sentence investigation report.

*Id*. at pp. 5-6.

After the judge announced the sentence, the following colloquy occurred between

the judge and petitioner:

| [THE COURT:] | Mr. Ortega, do you have any questions regarding your sentence in this case? |
|---|---|
| DEFENDANT: | Yeah, I get no credit for this time that I've been here you're saying, Your Honor? |
| THE COURT: | As I mentioned, because you're under sentence from another Court, mainly the Federal District Court in Wyoming, and you were basically on parole -- |
| DEFENDANT: | Yeah, and this -- |
| THE COURT: | -- the Court needs to make this consecutive. |
| DEFENDANT: | Yeah, I understand that but see they didn't let me go to Court over there.  I tried to go to court over there get [sic] that matter out of the way first.  They didn't allow me here. |
| THE COURT: | That's not my business about your other conviction, but I -- I guess I would expect that, you know, your jail time credit would apply to that, that conviction, not this conviction.  So it's not like the credit isn't going some place; it's going to the conviction that you were on parole for.

Any other questions? |
| DEFENDANT: | No. |

*Id.* at pp. 6-7.

Petitioner's appellate counsel, Mr. Mullison, moved for withdrawal of the guilty plea, resentencing and an evidentiary hearing, which were presented to the trial court on November 7, 2005. Motion Trans. (docket no. 31). The judge did not rule at that time, but invited the parties to engage in further briefing. *Id.* After reviewing the parties' positions, the judge denied the motions, with the exception of the $985.90 expense for summoning a jury, which the judge canceled because it was not included in the plea agreement. *See* Opinion and Order at p. 4 (Jan. 3, 2006). In reaching this decision, the judge noted that petitioner did not request to withdraw his plea or to be resentenced until August 29, 2005, nearly one year after the transcripts of the court proceedings were completed on September 29, 2004, and mailed to petitioner's appellate counsel. *Id.* at p. 2.

After denial of these motions, petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals raising the following issues:

I.    Did the trial court err by refusing to grant the defendant an evidentiary hearing to develop facts to support his claim of ineffective assistance of counsel, plea withdrawal and inaccurate information used at sentencing?

II.   Did the court err by not allowing the defendant to withdraw his guilty plea?

III.  Was the defendant's sentence invalid because it was based on inaccurate information, i.e., the court's improper scoring of the legislatively imposed sentencing guidelines, inaccurate information as to his prior record and other inaccuracies contained in the PSI which violated his due process rights, and can this be considered now because it is a constitutional question, because it has been preserved pursuant to MCR 6.429, and because of ineffective assistance of counsel?

IV.   Is resentencing before a different judge required after correction of the guideline scoring?

V.    Should a copy of the corrected PSI be sent to the Michigan Department of Corrections?

VI.   Did the trial court err by not granting the defendant jail credit?

VII.     Did the trial judge err by making the sentence consecutive to the federal out-of-state case?

VIII.     Should the defendant be allowed to withdraw his plea and receive a trial or, in the alternative, a resentencing because of incompetence of trial counsel?

*People v. Ortega*, No. 267912 (Mich. App.) (delayed application for leave to appeal) (docket no. 34).

The Michigan Court of Appeals denied the delayed application for lack of merit in the grounds

presented. *Id*. (Order) (Feb. 28, 2006).

        Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme

Court raising the following issues (in his words):

I.     The trial court erred by refusing to grant the defendant an evidentiary hearing to develop facts to support his claim of ineffective assistance of counsel, plea withdrawal and inaccurate information used at sentencing.

II.     The court committed clear error, when it denied the defendant to withdraw his guilty plea.

III.     The defendant's sentence is invalid and violates due process where it is based on inaccurate information.  Thus, a resentencing is mandated before a different judge, with jail credits awarded.

IV.     The trial court committed error when it failed to afford defendant jail credits for the time spent in the county jail, and where the court made the defendant's sentence "consecutive" to the federal out of state case.

V.     Due to defendant receiving ineffective assistance of counsel during the plea proceedings and sentencing, defendant should be allowed to withdraw his guilty plea and or be resentenced.

*People v. Ortega*, No. 131002 (Mich.) (application for leave to appeal) (docket no. 35).  The

Michigan Supreme Court denied the application.  *Id*. (Order) (Aug. 29, 2006).

        After his unsuccessful direct appeal, petitioner filed a *pro se* motion for relief from

judgment pursuant to MCR 6.500 *et seq*., raising two issues in the trial court (in his words):

I.      Defendant's plea does not contain the factual basis to allow defendant's plea to remain.  The reason the factual basis does not meet required amount of factual basis is for the "consent to search" used to locate evidence is the produce of a coerced and forged consent for the actual search.   Therefore a violation to defendant's IV Amendment has been violated by an unreasonable search and seizure.  Also ineffective assistance of trial and appellant counsel for not objecting, challenging, motioning for, and raising the issue on appeal has also demonstrated a involuntary plea based on rights not known to the defendant and never challenged in a proper constitutional manner.  Violating U.S. Constitutional Amendments VIII XIV and IV.

II.     Defendant is entitled to withdraw his plea, this is because his original charge and information sheet contains a charge of del/manuf controlled substance of 50 - 224 grams.  Defendant was bound over of an amount of 50 - 450 grams.  Defendants' sentence information contains 50 - 224 grams.  The jurisdiction of the charge bound over was a product of a jurisdictional defect and defendants' plea of guilty must not stand.  For the circuit court did not have jurisdiction to impose a sentence which was never amended.  The sentence is now invalid as for the conviction by plea should not stand.  This is a clear violation of defendants' U.S. Const. AM XIV.  In defendant proceedings both old and new statue are entered in the record.   MCL 333.7403(2)(A)(iii).

*People v. Ortega*, No. 04-4272-FH (Oceana Cir. Ct.) (Brief in support of the motion for relief from judgment) (April 6, 2007) (docket no. 36).  The trial court denied this motion, along with petitioner's motions for a *Ginther* hearing,[2] to suppress evidence, and to withdraw his plea, because the motions "fail to raise issues which merit review and the defendant has previously exhausted his appellate remedies."  *Id*. (Order) (March 15, 2007).

        Petitioner raised these two new issues in his delayed application for leave to appeal to the Michigan Court of Appeals, which that court denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Ortega*, No. 277279 (Mich. App.) (Order) (June 27, 2007) (docket no. 36).  Petitioner also raised the same two issues in his

_____

        [2] In *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973), the Supreme Court of Michigan held that a criminal defendant should move for a new trial and seek to make a separate factual record in the trial court if the trial record does not cover the claims he wishes to raise on appeal."  *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004).

application for leave to appeal to the Michigan Supreme Court, which that court denied because he

"failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v.*

*Ortega*, No. 134563 (Mich.) (Order) (Oct. 29, 2007) (docket no. 37).

        Ortega then filed a petition in this court seeking habeas relief under § 2254 (docket

no. 1), an amended petition (docket no. 7) and a supplement to the amended petition (docket no. 9).

The court will consider the following seven issues as set forth in the supplement to the amended

petition (in his words):

> I.     The court erred by refusing to grant the petitioner an evidentiary hearing to develop facts to support his claim of ineffective assistance of counsel, plea withdrawal and inaccurate information used at sentencing.

> II.    The court erred by not allowing petitioner to withdraw his guilty plea.

> III.   The petitioner's sentence was invalid because it was based on inaccurate information, i.e., the court's improper scoring of the legislatively imposed sentencing guidelines, inaccurate information as to his prior record and other inaccuracies contained in the PSI which violated his due process rights.  This can be considered now because it is a constitutional question, because it has been preserved pursuant MCR 6.429, and because of ineffective assistance of counsel.

> IV.   The trial court erred by not granting the petitioner jail credit, further, the trial judge erred by making the sentence consecutive to the federal out-of-state case.

> V.    The petitioner should be allowed to withdraw his plea and receive a trial or, in the alternative, a resentencing because of incompetence of trial counsel.

> VI.   Petitioner's plea does not contain the factual basis to allow petitioner's plea to remain.  The reason the factual basis does not meet required amount of factual basis is for the "consent to search" used to locate evidence is the product of a coerced and forged consent for the actual search.  Therefore, a violation to petitioner's IV Amendment has been violated by an unreasonable search and seizure.  Also, ineffective assistance of trial and appellate counsel for not objecting, challenging, motioning for, and raising the issue on appeal has also demonstrated a involuntary plea based on rights not known to the petitioner and never challenged in a proper constitutional manner.  Violating US Constitutional Amendments VI, XIV and IV.

VII.    Petitioner is entitled to withdraw his plea, this is because his original charge and information sheet contains a charge of del/manuf controlled substance of 50-224 grams.  Petitioner's sentence information contains 50-224 grams.  The jurisdictional defect and petitioner's pleas of guilty must not stand.  For the Circuit Court did not have jurisdiction to impose a sentence which was never amended.  The sentence is now invalid as for the conviction by plea should not stand.  The is a clear violation of petitioner's U.S. Const Am XIV.  In petitioner's proceeding both old and new statute are entered in the record.  MCL 333.7403(2)(A)(III).

Amend. Pet. (Supplement) (docket no. 9).

## II.    Petitioner's motion regarding argument IV

Petitioner has filed a motion to allow him "to expound upon argument/claim IV within his amended petition" (docket no. 23).  In his motion, petitioner seeks to raise two separate arguments in support of Issue IV.   This motion is not properly before the court, because petitioner has not filed a supporting brief as required by W.D. Mich. LCivR 7.1(a), which provides that all motions filed in this court must be accompanied by a supporting brief, which "shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies."  Even if petitioner had filed the required brief, his brief would need to provide an explanation for filing supplemental legal arguments some two years after respondent filed his answer.  Accordingly, petitioner's motion (docket no. 23) is **DENIED**.   Nevertheless, the court is cognizant of the arguments suggested by petitioner and will take those arguments into account.

### III.    Procedural default

### A.    Application of procedural default doctrine (Issues VI and VII)

Petitioner's Issues VI and VII are barred from habeas review under the procedural default doctrine.[3]  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice."  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner first raised these habeas claims in his motion for relief from judgment brought pursuant to MCR 6.500 *et seq.*  Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these claims because he failed to

---

[3] In addressing the procedural default of Issues VI and VII, the court will also address the related issues of ineffective assistance of trial counsel and ineffective assistance of appellate counsel, both of which were raised as independent claims for habeas relief.

13

meet the burden of establishing entitlement to relief under MCR 6.508(D).  The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes.  *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000).  Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal.  *Id.*  As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review.  *See Howard*, 405 F.3d  at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.  Accordingly, the claims raised in Issues VI and VII are procedurally defaulted for purposes of federal habeas review.

### B.      Cause and Prejudice

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Petitioner does not assert cause for the procedural default of Issue VII.  Accordingly, it is unnecessary for the court to consider this issue further. However, petitioner has asserted ineffective assistance of appellate counsel as both cause to excuse the procedural default of Issue VI and as an independent claim for habeas relief.

14

Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Murray*, 477 U.S. at 488; *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993).

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. Thus, appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981).   To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).   "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). Thus, appellate counsel cannot be found to be ineffective for failing to raise an issue that lacks merit. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).   As a practical matter, this approach requires the court to address the merits of those issues which petitioner claims that his appellate counsel should have raised.

       **1.**       **Appellate counsel was ineffective for failing to assert that the guilty plea was invalid due to trial counsel's ineffective assistance**

       First, petitioner contends that appellate counsel failed to assert that the guilty plea was invalid due to the ineffective assistance of trial counsel to properly investigate his case, because trial counsel failed to file a motion to suppress evidence and refused to consult with him "about possible defense [sic] which would go to the question of actual innocence insofar as the original charged offenses are concerned."   Suppl. Petition (docket no. 9) at p. 31.   When a guilty plea is challenged on the basis of ineffective assistance of trial counsel, the court applies the two-prong *Strickland* test. *Hill*, 474 U.S. 52, 58 (1985).   As to the first prong, the adequacy of counsel's performance, *Strickland* advises that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.   As to the second prong, the prejudice requirement,  the court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415-16 (6th Cir. 2008), quoting *Hill*, 474 U.S. at 58-59.   To prevail on the prejudice requirement, a habeas petitioner must demonstrate "a reasonable probability that, but for

16

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, -- U.S. --, 131 S.Ct. 733, 743 (2011) (internal quotation marks omitted). Where a state criminal defendant has pled guilty, the court should closely scrutinize a subsequent federal habeas claim that the guilty plea was invalid due to the alleged ineffective assistance of trial counsel. As the court observed in *Premo*:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. . . .
>
> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.
>
> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter*, --- U.S., at ----, 131 S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Id.* at 741-42.

### a. Trial counsel's failure to investigate a "possible defense"

Petitioner claims that his guilty plea was not valid, because his trial counsel failed to investigate a "possible defense which would go to the question of actual innocence." However, petitioner has neither identified this "possible defense" nor explained how such a defense would demonstrate his actual innocence to the extent that he would not have pled guilty and "insisted on

17

going to trial." *See Premo*, 131 S. Ct. at 743.  Based on this record, petitioner has not shown that counsel's performance was deficient or that he was prejudiced by counsel's actions.

Where a criminal defendant pleads guilty, the test for determining the validity of a guilty plea under the federal constitution is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56. *See Hart v. Marion Correctional Facility*, 927 F.2d 256, 257 (6th Cir. 1991) (to satisfy the dictates of due process, a plea "must be a voluntary, knowing, intelligent act").  For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence imposed. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795-96 (6th Cir. 1991); *Hart*, 927 F.2d at 259.  However, "the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King*, 17 F.3d at 153.  Such collateral consequences include a conviction's possible enhancing effect on subsequent sentences, that a conviction on a guilty plea can be used in a subsequent prosecution  resulting from a pending investigation, or the details of parole eligibility. *Id*. at 153.

When a state criminal defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary plea by producing a written transcript of the state court proceeding. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact. *Id*.  A habeas petitioner "must overcome a heavy burden" to have a federal court overturn these state court findings. *Id*. at 328.  In this case, the plea transcript shows reflects that petitioner's plea was a voluntary, knowing and intelligent act. *See* discussion in § I, *supra*.; Plea Trans. at pp. 1-12.

Petitioner has not shown that his trial counsel provided ineffective assistance with respect to entry of the guilty plea.  Appellate counsel cannot be found ineffective for failing to raise an issue that lacks merit. *See Shaneberger*, 615 F.3d at 452; *Greer*, 264 F.3d at 676.

18

####       b.       Trial counsel's failure to file a motion to suppress evidence

Petitioner characterizes counsel's failure to move for the suppression of evidence (i.e., the cocaine) as a matter involving the failure to investigate.  Contrary to petitioner's characterization, this claim involves the failure to file a pre-trial motion, not a failure to investigate.  Petitioner noted that counsel did not file the motion "because the Petitioner had admitted possessing it [i.e., the cocaine]."  Suppl. Petition (docket no. 9) at p. 31.  There is a limited record on this issue.  However, the court notes that counsel's purported position is supported by testimony at the preliminary examination, where a police officer testified that after petitioner waived his *Miranda* warnings, petitioner stated that "[t]he cocaine was his for his personal use" and the money found on the premises "was drug proceeds that he had picked up in Ohio  .  .  .  and that he was to meet an individual out of Chicago and give the money to him." Prel. Exam. at pp. 17-18 (docket no. 27).

Petitioner's claim of ineffective assistance with respect to the search and seizure is without merit.  A knowing and voluntary guilty plea waives all non-jurisdictional defects in the criminal proceedings.  *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).  This waiver includes claims of ineffective assistance of counsel that relate to alleged constitutional violations that do not attack the voluntary or intelligent nature of the plea.  *United States v. Stiger*, 20 Fed. Appx. 307, 308-9 (6th Cir. 2001), citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived by entry of  a guilty plea).  As previously discussed, petitioner entered a valid plea.  His claim that counsel failed to file a pre-trial motion is relates to an alleged constitutional violation that does not attack the validity of the guilty plea. Accordingly, this claim has been waived.  *Tollett*, 411 U.S. at 266-67; *Stiger*, 20 Fed. Appx. at 308-9; *Bohn*, 956 F.2d at 209.  Appellate counsel cannot be found ineffective for failing to raise an issue that lacks merit. *See Shaneberger*, 615 F.3d at 452; *Greer*, 264 F.3d at 676.

####       2.       Unreasonable search and seizure

Finally, petitioner contends that his appellate counsel was ineffective for failing to appeal the alleged unreasonable search and seizure.  Because petitioner entered a valid guilty plea,

this claim has been waived. *Tollett*, 411 U.S. at 266-67. There was no basis for appellate counsel to contest this non-jurisdictional defect. Appellate counsel cannot be found ineffective for failing to raise an issue that lacks merit. *See Shaneberger*, 615 F.3d at 452; *Greer*, 264 F.3d at 676.

Accordingly, petitioner has failed to demonstrate cause for the procedural default of Issues VI and VII.

### C.    Fundamental miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of habeas claims raised in Issues VI and VII unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Claims of actual innocence are rarely successful because such evidence is unavailable in the vast majority of cases. *Id.* Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted. He has failed to meet the fundamental miscarriage of justice exception.

Accordingly, petitioner's claims raised in Issues VI and VII are procedurally barred and not subject to habeas review.

20

## IV.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.   *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).   Petitioner has met the exhaustion requirement with respect to the remaining habeas claims raised in Issues I, II, III, IV and V.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).   An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

## V.    Discussion

### A.    State Law claims (Issues I, II, III and IV)

Petitioner's habeas petition includes a number of claims arising under state law: that the state trial judge denied his motion for an evidentiary hearing to develop facts to support his claim of ineffective assistance of counsel, plea withdrawal and inaccurate information used at sentencing (Issue I);  that the state trial judge denied his motion to withdraw his guilty plea (Issue II); that the state trial judge improperly scored sentencing guidelines (Issue III); and that the state trial judge failed to give him credit for time served on a separate federal conviction (Issue IV).  Petitioner's claims involve state law issues not cognizable on federal habeas review.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002) (federal courts performing habeas review do not act as "super-appellate state courts" with respect to matters of state law).

With respect to Issues I and II, petitioner's right to an evidentiary hearing and his right to withdraw a guilty plea are matters regulated by state law.  *See* MCR 6.310 ("Withdrawal or vacation of plea before acceptance or sentence") and MCR 6.3111 ("Challenging plea after

sentence").[4]  A criminal defendant has no federal constitutional right to withdraw a guilty plea.  *See United States v. Woods*, 554 F.3d 611, 613 (6th Cir. 2009) (in construing Fed. Rules Crim. Proc. 11(d), court held that "[t]he defendant is not entitled to an evidentiary hearing or the withdrawal of her plea as a matter of right; both are within the wide discretion of the district court, which we review for abuse of discretion"); *Johnson v. Prelesnik*, No. 2:08-cv-13741, 2010 WL 2804937 at *7-8 (E. D. Mich. June 23, 2010) ("[a] criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea") *citing Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902 at *2 (6th Cir. Jan. 29, 1996).

   With respect to Issue III, federal habeas corpus relief does not lie for an error in computing a prisoner's sentence under state law.  *See  Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003) ("[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only");  *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003) (the actual computation of a prison term involves a matter of state law that is not cognizable under § 2254); *Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

   With respect to Issue IV, the computation of a particular sentence as consecutive or concurrent, and the crediting  for time served  on a conviction arising from another jurisdiction are also matters of state law.  *See People v. Gallagher*, 404 Mich. 429, 439-40, 273 N.W.2d 440 (1979) (for purposes of receiving credit for time served, "[t]he rule in Michigan is that a sentence may not be imposed to commence at the completion of another sentence in the absence of statutory authority").  Because it is a matter of substantive state law whether petitioner's sentences should run concurrently or consecutively, petitioner's claim is not cognizable in a federal habeas corpus proceeding.  *See Harrison v. Parke*, No. 89-6495, 1990 WL 170428 at *2 (6th Cir. Nov. 6, 1990) ("[b]ecause it is a matter of substantive state law whether Harrison's sentences should run

---

   [4] The Michigan Supreme Court amended MCR 6.310 and deleted MCR 6.311, effective January 1, 2006.  The court notes that the trial court considered petitioner's motion under the pre-amendment versions of these rules.  *See* Opinion and Order (Jan. 3, 2006).

concurrently or consecutively, we find that the district court did not err in ruling that Harrison's challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding") (citing *Wainwright v. Sykes*, 433 U .S. 72, 81 (1977)); *Jones v. Smith*, No. 94-5259, 1995 WL 45631 at *1 (6th Cir. Feb. 3, 1995) (petitioner's "contention that his consecutive life sentences are unauthorized under state law does not warrant habeas relief.") (citing *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982). Moreover, a criminal defendant's ignorance of the effect of a guilty plea on a conviction in another jurisdiction is a collateral consequence of his guilty plea which does not render the plea involuntary. *King v. Dutton*, 17 F.3d 153-54 (6th Cir. 1994). "[T]he trial court is under no constitutional obligation to inform the defendant of all the possible consequences of the plea." *Id*. *See also, United States v. Cottle*, 355 Fed. Appx. 18, 20 (6th Cir. 2009) (same).

Accordingly, the state law claims raised in petitioner's Issues I, II, III and IV should be denied.

### B.      Federal claims

The court finds three federal claims raised in the habeas petition: a federal due process claim in Issue III; ineffective assistance of trial counsel claims raised in Issue V; and ineffective assistance of appellate counsel claims raised in Issue VI.

#### 1.      Due Process claim (Issue III)

As part of his Issue III, petitioner contends that his due process rights were violated because his sentence was based upon inaccurate information contained in the PSI. Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.' " *Koras v. Robinson*, 123 Fed. Appx. 207, 213 (6th Cir. Feb.15, 2005) (*citing Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir.2003)). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras*, 123 F. Appx. at 213 (*quoting Roberts v. United States*, 445 U.S. 552, 556 (1980)); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

24

To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir.1984); *Koras*, 123 F. Appx. at 213 (*quoting United States v. Stevens*, 851 F.2d 140, 143 (6th Cir.1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Here, petitioner contends that the PSI contains two errors: (1) a reference to a conviction for possession of stolen property and possession of marijuana for sale; and (2) a reference to a felony conviction for transporting cocaine. According to petitioner, the charges for possession of stolen property and possession of marijuana were later dismissed without a conviction, and the cocaine conviction was a misdemeanor (as opposed to a felony) and later dismissed. Petitioner contends that if these corrections were made to the PSI, then the minimum sentence guideline would have been lowered from a range of 99 to 200 months to a range of 78 to 162 months.[5]

Petitioner's claim is without merit. First, at his sentencing, petitioner agreed with the accuracy of the PSI. Sent. Trans. at pp. 4-5. Petitioner's stipulation that the information contained in the PSI was correct forecloses his new claim that the PSI was so inaccurate as to violate his federal due process rights. Second, petitioner's sentence fell within the range of reasonableness as determined by the prosecutor and petitioner, who agreed to a minimum sentence cap of ten years. Third, even if the court assumes that the PSI contained inaccurate statements petitioner is not entitled to any relief because he has not been prejudiced. The court's sentence of 10 years (120 months) imprisonment fell within minimum guideline range under both the original PSA (99 to 200 months) and the "corrected" PSI (78 to 162 months). Accordingly, this claim should be denied.

---

[5] The court notes that a complete copy of the PSI is not before the court.

### 2.   Ineffective assistance of trial counsel (Issue V)

#### a.   Trial counsel's failure to investigate

As previously discussed in § III.B., *supra*, trial counsel's alleged failure to investigate did not constitute ineffective assistance of counsel.  Accordingly, this claim should be denied.

#### b.   Trial counsel's failure to advocate at sentencing

Petitioner contends that trial counsel was ineffective for failing to advocate on his behalf at sentencing, i.e., that trial counsel failed to correct errors in the PSI related to the dismissal of two convictions in California.  Suppl. Pet. at pp. 31-32.  As previously discussed, petitioner waived these arguments when he agreed that the PSI was accurate.  *See* discussion in § V.B.1, *supra*. Furthermore, even if trial counsel had been deficient in failing to correct an error on the PSI, petitioner was not prejudiced by the alleged error.  As previously discussed, the state court's sentence fell within the parties' agreed upon sentence cap and well within the range of the minimum sentence guidelines under both the original PSI and the "corrected" PSI.  *Id.*  Accordingly, this claim should be denied.

### 3.   Ineffective assistance of appellate counsel (Issue VI)

As previously discussed in § III.B., *supra*, appellate counsel was not ineffective. Accordingly, that claim should be denied.

### VI.   Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  August 9, 2011                          /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge

26

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).